IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ESTATE OF LEONARD HUBBARD,: | |
| DECEDENT                        : | CASE NO. 2:23-cv-1122 |
| and                             : | |
| STEPHANIE HUBBARD, beneficiary of : | COMPLAINT FOR DAMAGES |
| the Estate of Leonard Hubbard   : | AND INJUNCTIVE RELIEF |
| *Plaintiffs*                    : | FOR VIOLATIONS OF THE |
| v.                              : | FEDERAL RACKETEER |
|                                 : | INFLUENCED AND CORRUPT |
| SHAWN GEE; AHMIR THOMPSON;      : | ORGANIZATIONS ACT |
| TARIK TROTTER; MUNIR HURIDDIN   : | |
|                                 : | JURY TRIAL DEMANDED |
| and                             : | (CIVIL **RICO**) |
| LEGANDELPHIA MUSIC, LLC.; OKAY  : | 18 U.S.C. § 1964 |
| TOURS, LLC; GRAND WIZARDS, LLC; : | |
| THE ROOTS ON TOUR, INC., LIVE   : | TRADEMARK INFRINGEMENT |
| NATION ENTERTAINMENT, INC       : | 15 U.S.C. §§ 1114 AND 1125(a) |
| BLUEPRINT ARTISTS MANAGEMENT,   : | |
| LLC; TRUER NOTES, INC; OKAY     : | |
| PLAYER RECORDS, LLC             : | PA. 54 § 1123 |
| GRAND NEGAZ, INC.               : | (Pennsylvania Trademark Act) |
|                                 : | INFRINGEMENT |
| *Defendants*                    : | |
|                                 : | Tortious Interference with |
|                                 : | Expected Inheritance |

Plaintiffs bring this civil action to rectify Defendants' violations of the

federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964

("RICO"). The RICO Defendants are advancing a continuing scheme to defraud

both Plaintiffs of money.

III. JURISDICTION AND VENUE

The Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1338 and 28 U.S.C. § 1367 (Supplemental Jurisdiction).  Venue is proper in the Eastern District of Pennsylvania.  The Estate of the Decedent is located geographically within the Commonwealth of Pennsylvania. The Plaintiff Beneficiary, Stephanie Hubbard resides in the Commonwealth of Pennsylvania.  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Philadelphia County, Pennsylvania. 28 U.S.C. §1391(a)(2). The Defendants transacted a substantial amount of their affairs in Philadelphia County, Pennsylvania, located within the Eastern District of Pennsylvania.

II. **PARTIES**

   A. Plaintiffs.

1. Stephanie Hubbard was granted Letters Testamentary on March 24, 2022, and is the lawful Executrix of the Pennsylvania Estate of Leonard Hubbard, Plaintiff-Decedent, who passed on December 16, 2021.  References herein to the "Plaintiff-Decedent" include the Estate of the Decedent, Leonard Hubbard.

2. Plaintiff Stephanie Hubbard is the named Beneficiary of the Last Will and Testament of Decedent Leonard Hubbard.

B. Defendants.

1. RICO Defendant Shawn Gee, is an adult resident of Pennsylvania who does business at One Presidential Blvd., Conshohocken, PA. 19004, and is the cousin of RICO Defendant Tarik Trotter.

2. RICO Defendant Ahmir Thompson, is an adult resident of Pennsylvania who does business at One Presidential Blvd., Conshohocken, PA 19004.

3. RICO Defendant Tarik Trotter is an adult resident of Pennsylvania who does business at One Presidential Blvd., Conshohocken, PA 19004.

4. RICO Defendant Munir Nuriddin is an adult resident of Pennsylvania who does business at One Presidential Blvd., Conshohocken, PA 19004.

5. Sports and Entertainment Financial Group, Inc., (SEFG) is a Pennsylvania corporation doing business at One Presidential Blvd., Conshohocken, PA. 19004

6. Legendelphia Music, LLC., is a Pennsylvania corporation doing business at One Presidential Blvd., Conshohocken, PA 19004.

7. Blueprint Artists Management, LLC. (BAM), is a Delaware registered LLC, doing business in Pennsylvania at One Presidential Blvd., Conshohocken, PA 19004, with an address in California at 9348 Civic Center Drive, Beverly Hills, CA. 90210.

8.  Live Nation Entertainment, Inc., is a subsidiary of Liberty Media
    Corporation, with offices in Beverly Hills, California and Philadelphia,
    PA. 90210.

9.  Truer Notes, Inc., is a Pennsylvania Corporation with an address at 1800
    J.F.K. Blvd., Philadelphia, PA. 19103.

10. Okay Players Records, LLC, is a Pennsylvania Limited liability
    Company with a registered address at 509 Davis Road, Cheltenham, PA.,
    19012.

11. The Roots on Tour, Inc. is a Pennsylvania Corporation with an address at
    One Presidential Blvd., Conshohocken, PA 19004.

12. The Roots Picnic, LLC is a Pennsylvania Limited Liability Company
    with an address at One Presidential Blvd., Conshohocken, PA 19004.

**The Enterprises.**

1.  At all times relevant hereto, **Grand Negaz, Inc** constitutes an
    "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c),
    and was engaged in, and/or its activities affected, interstate commerce
    and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

2.  Grand Negaz, Inc, as alleged herein, was not limited to RICO
    Defendants' predicate acts and has activities extending beyond RICO

Defendants' racketeering activity and exists separate and apart from the pattern of racketeering activity.

3. At all relevant times, **Grand Wizards, LLC** constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and at all relevant times was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

4. Grand Wizards, LLC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity and exists separate and apart from the pattern of racketeering activity and has had and does have legitimate business plans outside the pattern of racketeering activity related to Grand Wizards, LLC.

5. At all times relevant hereto, **Sports and Entertainment Financial Group, Inc**., constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

6. Sports and Entertainment Financial Group, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending

beyond RICO Defendants' racketeering activity, and exists separate and apart from the pattern of racketeering activity.

7. At all times relevant hereto, **RICO Defendants Gee, Thompson, and Trotter** created an 'Association-in-Fact' (the "Plotters"), that constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

8. The "Plotters" as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity and exists separate and apart from the pattern of racketeering activity.

9. At all relevant times, **Live Nation Entertainment, Inc**., and any subsidiary thereof constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. §1962(c).

10. In or about 2014, Live Nation Entertainment, Inc., purchased RICO Defendant SEFG who changed its name to Blueprint Artists Management, LLC.

11. Live Nation, as alleged herein, was not limited to RICO Defendants'
predicate acts and has activities extending beyond RICO Defendants'
racketeering activity and exists separate and apart from the pattern of
racketeering activity for the legitimate business purpose of, inter alia,
providing venues, ticket sales and promotions for touring artists.

12. At all relevant times, **Blueprint Artist Management, LLC** constitutes
an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c),
and was engaged in, and/or its activities affected, interstate commerce
and/or foreign commerce within the meaning of 18 U.S.C. §1962(c).

13. In or about 2014, RICO Defendant Shawn Gee, Gerald Roberson and
Cortez Bryant formed Blueprint Artists Management, LLC.

14. Blueprint Artist Management, LLC, as alleged herein, was not limited to
RICO Defendants' predicate acts and has activities extending beyond
RICO Defendants' racketeering activity and exists separate and apart
from the pattern of racketeering activity for the legitimate business of
managing recording and touring artists and has had, and does have,
legitimate business plans outside the pattern of racketeering activity
related to Blueprint Artist Management, LLC.

15. At all relevant times, **The Roots on Tour, LLC** constitutes an
"Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c),

and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. §1962(c).

16. The Roots on Tour, LLC as alleged herein, was not limited to RICO Defendants' predicate acts and has business extending beyond RICO Defendants' racketeering activity and exists separate and apart from the pattern of racketeering activity.

17. At all times relevant hereto, **Universal Music Publishing Group** constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

18. Universal Music Publishing Group, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity, and exists separate and apart from the pattern of racketeering activity.

19. At all times relevant hereto, **Legendelphia Music, LLC** constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

20. Legendelphia Music, LLC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity, and exists separate and apart from the pattern of racketeering activity.

21. At all times relevant hereto, **Truer Notes, Inc.,** constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), and was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

22. Truer Notes, Inc, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity and exists separate and apart from the pattern of racketeering activity.

BACKGROUND

23. RICO Defendant Grand Negaz, Inc., was formed in 1993 as a S corporation with RICO Defendants Thompson and Trotter as 37% shareholders each and Malik Smart and Plaintiff-Decedent as 17% shareholders respectively. Collectively, the four individuals became known as "The Roots" musical group.

24. The trademark the "ROOTS' was federally registered in 1996 with the USPT Office, Regislation #1966181, with Grand Negaz, Inc., as the registered Owner, The trademark registration was renewed in 2006.

25. Grand Negaz, Inc., has never held formal activities at all.  No initial meeting (or any other meeting), no election of officers, no periodic reporting, no anything except………a bank account and a name; a financial account center that the RICO Defendants used with a pattern of racketeering acts to spend lavish money to open new businesses for themselves and to fraudulently seize control of the assets and income of the Plaintiff-Decedent.

26. To that end, in addition to owning all of the registered copyrights of their collective original musical material, the shareholders of Grand Negaz, Inc., formed Grand Wizards, LLC to operate as a production entity for monies, including advances, for operating recorded musical production and Okay Tours, LLC to operate as a touring performance and operation entity.

27. RICO Defendant Grand Wizards, LLC, formed in 1999, operates as the "arm" of the Roots that contracts for funds and collects monies from various sources for the production of recorded music.  Plaintiff Decedent,

and therefore the Estate of the Decedent, is a 25% Member of Grand Wizards, LLC.

28. Formed in 2000, RICO Defendant Okay Tours, LLC, operated as the "arm" of the Roots that contracted for funds and monies via personal appearances live performances and Decedent a 33% of RICO Defendant Okay Tours, LLC.

29. These three (3) revenue streams (publishing, production and performance/promotion) when coupled with marketing and merchandising of the "Roots" brand, comprised almost all of the revenue streams to the RICO Defendant Grand Negaz, Inc., and subsequent RICO Defendant Legendelphia, LLC, and therefore the four individual shareholders.

30. From March 2013 until the present, without lawful authority from the Decedent, and the Estate of the Decedent. RICO Defendants Gee, Thompson, and Trotter, individually and as an association-in-fact ("the Plotters"), entered into contracts with various business entities and opened up bank accounts with PNC to deposit Plaintiff-Decedent's monies, by falsely purporting to represent all shareholders of GNI, including the Plaintiff-Decedent; and all copyright owners of the "Roots" intellectual property, including the Plaintiff Decedent; and, through acts

of forgery, wire fraud, bank fraud, mail fraud, and criminal copyright

infringement, as more particularly described herein, received millions of

dollars of "commissions" from Grand Negaz, Inc., Okay Tours, LLC,

Grand Wizards, LLC, and Roots on Tour, Inc., and from "all income

streams" to GNI, including federally protected copyrights payments to

the individual shareholders of GNI, and monies belonging to the

Decedent, and therefore, the Estate of the Decedent.

31. RICO Defendants Shawn Gee, Thompson, and Trotter, intended to obtain

money (the "commissions") by means of materially false and fraudulent

pretenses and representations, and intended to prevent Plaintiff-Decedent,

and therefore the Estate of the Decedent, from receiving his revenue from

his federally protected copyrights and trademark rights and his rights

under revenue streams as owner of GNI (17%), Grand Wizards, LLC

(33%), Okay Tours, LLC (25%) and owner of the brand name "ROOTS."

32. From 2014 until the present, RICO Defendants Shawn Gee, Thompson,

Trotter, BAM, Grand Negaz, Inc., and Live Nation Entertainment,

through a pattern of racketeered behavior, fraudulently converted,

divested and absconded with monies lawfully belonging to the Plaintiff

Decedent, to wit, income from the "Roots" brand and trademark usage

merchandise, promised income from performance contracts, income from

copyrighted musical material, including digital licenses, master use

licenses and sync licenses revenue.

33. From 2013 until the present, RICO Defendants Thompson, Trotter,

Nuriddin and Gee conspired, agreed and acted among themselves, and

utilizing the enterprises of Grand Negaz, Inc., UMPG, SEFG and then

Blueprint Artists and Live Nation did create and operate a pattern of

racketeering to defraud the business of Plaintiff Decedent and therefore

the Estate of Leonard Hubbard.

34. The acts of the RICO Defendants pose a threat of continued racketeering

activity because they are a regular way of conducting the RICO

Defendants' ongoing legitimate business and they are a regular way of

conducting or participating in the RICO Defendants' ongoing and

legitimate enterprises.

35. The registered brand name trademark ROOTS existed to represent the

value of the efforts of the four shareholders of the band.

36. From 2013, until 2023, the RICO Defendants' ongoing organizations and

its various associates controlled, operated and maintained multiple

Enterprises and a continuing association-in-fact Enterprise in order, and

in a manner, to further the common purpose of deceiving an Owner of the

Main Corporation, Grand Negaz, Inc., (100% Owner of the federally

registered trademark name ROOTS), from which *all* revenue flowed in the beginning.

37. Without lawful authority, this association-in-fact (Defendants Gee, Thompson and Trotter)(Collectively called the "Plotters."), and those affiliated with it, using the mail, wires, internet, bank accounts and other electronic means of communication, intentionally and fraudulently took control of the finances of the Grand Negaz, Inc., Legendelphia, LLC, Grand Wizards, Okay Tours, LLC, the Roots on Tour, Inc., including all of Plaintiff-Decedent's share value.

38. In April, 2013, RICO Defendants Shawn Gee, Ahmir Thompson and Tarik Trotter, formed a group of individuals associated in fact together (The "Plotters") for the common purpose of engaging in conduct to conspire and agree among themselves to create an entity to acquire, seize, transfer and convert 100% of the assets of Grand Negaz, Inc., including the publisher accounts for payments, advances and monies due Plaintiff-Decedent, from Grand Negaz, Inc., to another entity in which he had no interest whatsoever called Legendelphia, LLC.

39. Operating through the herein named Enterprises, the Plotters shut down the businesses owned by Grand Negaz, Inc. and established the RICO Enterprise Legendelphia, LLC., a new and sudden unauthorized business

creation that became the fraudulent authority for the signatory Grand
Negar, Inc.

40. Without notice to the legitimate shareholders of Grand Negaz, Inc., The
RICO Defendants Thompson and Trotter formed Legendelphia, LLC, in
May 2013, from the assets of Grand Negaz, Inc., utilizing the funds,
trademark brand revenue and part ownership of which belonged to the
ROOTS owner Plaintiff-Decedent and the Estate of the Decedent.

41. From that one fraudulent transfer emanated the other Roots changes and
manipulations as described herein.

42. The RICO Defendants unlawfully, while utilizing racketeering activities,
took control of the named Enterprises herein and, utilizing racketeering
patterns, took the monies of Plaintiff-Decedent, and harmed the Plaintiff-
Decedent's music businesses.

43. Finally, the RICO Defendants proximately caused the Beneficiary of the
Decedent's Last Will and Testament to be harmed by the fraudulent
conversion of the expected assets of her husband's estate.

I.   NATURE OF THE CASE

44. Shawn Gee, Ahmir Thompson, Tarik Trotter, Munir Nuriddin, Sports and
Entertainment Financial Group (SEFG), Grand Negaz, Inc., Legendelphia
Music, LLC, Okay Tours, LLC, Okay Player Records, LLC, Grand Wizards,

LLC, The Roots on Tour, Inc., UMG Commercial Services, Inc.(UMG), Universal Music Publishing Group (UMPG), The Roots Picnic, LLC and Live Nation (collectively, "RICO Defendants") have violated RICO.

45. Since at least March 2013, RICO Defendants Gee, Thompson, Trotter and Nuriddin have committed the predicate acts of wire fraud, mail fraud, bank fraud and copyright infringement, as enunciated herein, and have falsely behaved and represented themselves as the owners, managers, organizers, representatives, partners or agents of protected common law, state and federal rights and copyrights belonging to the DECEDENT and now to the ESTATE of the Decedent Leonard Hubbard.  RICO Defendants' acts and omissions were deliberate and continuous and part of a scheme to defraud DECEDENT, and therefore the Estate of Leonard Hubbard of money, property, and benefits of monetary value by depriving DECEDENT, and therefore the ESTATE of Leonard Hubbard, of the benefits of ownership, brand trademark value, registration, contract, common law, state and federal rights through false pretenses and misrepresentations.

46. RICO Defendants carried out their scheme to defraud DECEDENT, and the ESTATE of Leonard Hubbard, through their official positions in, or control of, enterprises or other affiliations and associations as enunciated herein, with Sports and Entertainment Financial Group, Blueprint Artists

Management, Grand Negaz, Inc., Legendelphia Music, LLC, Okay Tours, LLC, Okay Player Records, LLC, Grand Wizards, LLC, The Roots on Tour, Inc., Universal Music Group, Universal Music Publishing, NBC Studios, SoundExchange, The Roots Picnic, LLC, and Live Nation, Truer Notes,  and Randy Watson, LLC.

47. The RICO Defendants used or caused the use of banks, financial institutions, computers, the mails and wires to execute their scheme, and to personally enrich themselves.

48. RICO Defendants Gee, Thompson, Trotter, and Nuriddin, conspired and agreed together and conducted a scheme or artifice to defraud and convert monies of the Plaintiff Decedent and engaged in a racketeered pattern of wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), bank fraud (18 U.S.C. § 1344), copyright infringement (17 U.S.C. § 506(A) and 18 U.S.C. § 2319) and submitted false claims for payment of copyrighted song, mechanical, digital, publishing, performance and brand marketing rights from Universal Music Group, Universal Music Publishing, NBC Studios LLC, and SoundExchange, and the Roots Picnic, for the purpose of inducing fraudulent payments to SEFG, Gee, Thompson, Trotter, Truer Notes, , Randy Watson, Blueprint Artists Management, Live Nation, Grand Wizards, the Roots Picnic, Legendelphia, LLC, and OK Player Records, LLC.,

consisting of licensing, publishing, recording, performance and mechanical royalties, commissions, advances, brand royalties and other monies due to Decedent, and now the Estate of Leonard Hubbard.  By defrauding the DECEDENT, and the ESTATE of Leonard Hubbard, Defendants have further personally enriched themselves.

49. The racketeered patterns herein are related, and repeated and have the same or similar purposes, goals and victim, and by its very nature, pose a significant threat of continued criminal activity.

FIRST CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(a)
(RICO Defendants Gee, Thompson, and Trotter)
*Enterprises*
Grand Negaz, Inc. and Legendelphia, LLC

50. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

51. At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

52. In or about May 2013, RICO Defendants Gee, Thompson, and Trotter, without notice to Plaintiff Decedent, took monies from the account of enterprise Grand Negaz, Inc., some of which belonged to the owner Plaintiff-Decedent, and through a pattern of racketeering activity, used those

monies to acquire an interest in, or establish, enterprise Legendelphia, LLC, and made themselves sole members, in violation of 18 U.S.C. § 1962(a).

Pattern of Racketeering Activity.

53. On or about May 17, 2013, RICO Defendants Gee, Thompson, and Trotter, without notice to Plaintiff Decedent, took monies from the bank account of enterprise Grand Negaz, Inc., some of which belonged to the owner Plaintiff-Decedent, and through the utilization of electronic communication and the creation of fraudulent bank accounts, used those monies to acquire an interest in, or establish, Legendelphia, LLC, in violation of 18 U.S.C. § 1962(a).

54. On or about May 17, 2013, RICO Defendants Gee, Thompson and Trotter, via email and phone acting through the SEFG and Grand Negaz, Inc., Enterprises, and without the knowledge or consent of the Plaintiff-Decedent, directed David Nasastir to file a Pennsylvania Department of State form to create the enterprise Legendelphia, LLC (a Pennsylvania Limited Liability Company), the purpose of which was to fraudulently siphon all assets of the enterprise Grand Negaz, Inc., away, including protected copyright ownership and shareholder  rights of the Plaintiff-Decedent, over to the enterprise Legendelphia, LLC.

55. On or about May 17, 2013, Annette M. Talerico, on behalf of, and at the
direction of, RICO Defendants Gee, Thompson, and Trotter did
electronically transmit a completed official form organizing Legendelphia,
LLC.

56. As a direct and proximate result of such violations, RICO Defendants
proximately caused harm to the business of Plaintiff Decedent and therefore
the Estate of Decedent.

SECOND CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(b)
(RICO Defendants Gee, Thompson and Trotter)
*Enterprises*
Grand Negaz, Inc., Legendelphia, LLC, Grand Wizards, LLC, and Universal
Music Publishing Group

57. Plaintiffs incorporate by reference all the preceding paragraphs of this
Complaint as if fully set forth herein.

58. At all relevant times, RICO Defendants are each "person[s]" within the
meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

59. From June, 2013 until the present, RICO Defendants Gee, Thompson and
Trotter, through a pattern of racketeering activity, within the meaning of 18
U.S.C. §§ 1961(1), 1961(5), and 1962(c), maintained control of both Grand
Negaz, Inc., and Legendelphia, LLC, while committing violations of 17

U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341 and 1343; of 18 U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i), and therefore did violate 18 U.S.C. § 1962(b).

<u>Pattern of Racketeering Activity</u>

60. In or about July 2013, and until the present, for the purpose of unlawfully seizing the monies of the Plaintiff-Decedent, RICO Defendant Gee did represent himself, and fraudulently held himself out, in the mails and on electronic communication devices, to PNC Bank and other banking institutions as the person, who holds the controlling authority of Grand Negaz, Inc., to sign state, banking and corporate filing forms on behalf of Grand Negaz, Inc., to enter into agreements regarding the marketing of the Roots' Brand/Trademark and the publishing of original musical material and payments thereof for Grand Negaz, Inc., and then for Legendelphia, LLC.

61. Such holding out by RICO Defendant Gee is fraudulent and any authority he might have exercised on behalf of Plaintiff-Decedent regarding specific financial accounts was without the knowledge of Plaintiff-Decedent and therefore lacked the required approval of the shareholder of Grand Negaz, Inc., and the owner of the brand trademark, the ROOTS.

62. In September 2014, RICO Defendant Gee, using electronic mail devices, and with fraudulent authority, utilizing enterprises SEFG, secretly deactivated

the Plaintiff-Decedent's personal royalty account with RICO Defendant

UMPG to hide his fraudulent financing activities.

63. In September 2013, RICO Defendant Gee, using electronic mail devices,

directed RICO Defendant Nuriddin to fraudulently establish an electronic

royalty account under Grand Negaz, Inc., and Legendelphia, LLC, with

RICO Defendant UMPG for the purpose of providing fraudulent access to

monies belonging to Plaintiff-Decedent, by RICO Defendants Gee and

Huriddin.

64. On or about September 11, 2013, RICO Defendant UMPG acknowledged

via email that payments from RICO Defendant UMPG of copyrighted

compositional rights to the Plaintiff-Decedent, were now under the sole

control of Legendelphia, LLC., solely owned by RICO Defendants,

Thompson and Trotter, and operationally under the control of RICO

Defendant Gee.

65. On October 8, 2013, RICO Defendant Gee sent Plaintiff-Decedent an email

that contained false statements and misrepresentations regarding financial

records that the Plaintiff-Decedent had requested.  These false statements

were made electronically and made for the purpose of hiding access to

financial records that would have exposed the theft of funds and secret

advances from the portal account Plaintiff-Decedent created by RICO Defendant UMPG.

66. The Plaintiff-Decedent relied upon the false representations of the RICO Defendant Gee.

67. RICO Defendant Gee made the false statements with the knowledge of the impending demise of the Plaintiff-Decedent in the attempt to 'wait him out' before having to fully disclose the fraudulent financial situation created by RICO Defendant Gee utilizing the Enterprises of SEFG, Grand Negaz, Inc., and Legendelphia, LLC.

68. On or about August 12, 2016, RICO Defendant Gee sent an email to Plaintiff-Decedent acknowledging that RICO Defendant Gee had, without consent, deposited into a banking institution account for enterprise Grand Wizards, LLC, monies that were the property of the Plaintiff-Decedent but that RICO Defendant Gee intended to keep as his own.

69. As a direct and proximate result of such violations, RICO Defendants proximately caused harm to the business of Plaintiff-Decedent and therefore the Estate of Decedent.

THIRD CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(c)
(RICO Defendants Gee, Thompson, and Trotter)
*Enterprises*
Grand Negaz, Inc., Legendelphia, LLC, and Universal Music Publishing Group

70. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

71. At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

72. RICO Defendants Gee, Thompson, and Trotter each of whom are persons associated with, or employed by, Grand Negaz, Inc., and Legendelphia, LLC., and did conduct or participate, directly or indirectly, in the affairs of Grand Negaz, Inc., and Legendelphia, LLC, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), while committing violations of 17 U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341 and 1343; 18 U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i), and therefore did violate 18 U.S.C. § 1962(c).

Pattern of Racketeering Activity.

73. On May 14, 2013, RICO Defendant Gee, utilizing the Enterprise SEFG, transmitted to the Plaintiff-Decedent an email containing falsehoods and misrepresentations regarding the location and status of monies owed to Plaintiff-Decedent by SEFG and would not presently give him the catalog splits representing the amount of available cash on hand. The Plaintiff-Decedent detrimentally relied upon the false statements of the RICO Defendant Gee.

74. On or about July 2013, and until the present, regularly every day, RICO Defendant Gee did falsely represent himself in the mails and on electronic communication devices, as the person, who holds the controlling authority of Grand Negaz, Inc., to sign state, banking and corporate filing forms on behalf of Grand Negaz, Inc., to enter into agreements regarding the publishing of original musical material and payments thereof for Grand Negaz, Inc., and thereafter Legendelphia, LLC.

75. On or about August 2013, RICO Defendants Gee, Thompson and Trotter directed and caused a letter and email to be written from Legendelphia. LLC to RICO Defendant Universal Music Publishing Group (UMPG), that demanded all publishing and writing royalties, including those of the Plaintiff-Decedent, be diverted from Grand Negaz, Inc., to the newly formed Legendelphia, LLC.

76. On about September 2013, and continuing to the present day, RICO Defendants Gee, Thompson and Trotter, and others associated with such association-in-fact, thereby made innumerable telephone calls and transmitted letters and emails for the purpose of RICO Defendants Gee, Thompson and Trotter, receiving, and they have received, at the minimum of twice yearly, multiple electronic payments, advances, commissions, and other monies, including those belonging to the Plaintiff-Decedent, from

UMPG utilizing the accounts of financial institutions, including PNC, set up by RICO Defendant Gee under fraudulent authority.

77. On October 8, 2013, after putting him off for 6 months, RICO Defendant Gee transmitted to Plaintiff-Decedent an email that contained false statements and misrepresentations regarding financial records that the Plaintiff-Decedent was requesting.  These false statements were made electronically and made for the purpose of hiding access to financial records that would have exposed the theft of funds and secret advances from the portal account of RICO Defendant UMPG.

78. On August 9, 2018, without authorization from Plaintiff-Decedent, RICO Defendant Huriddin, at the direction of RICO Defendant Gee, utilizing Enterprise SEFG, electronically communicated procedures and codes that allowed him to unlawfully seize control of, and gain access to, the royalty payments due to Plaintiff-Decedent.

79. On August 9, 2018, RICO Defendant Huriddin, using electronic mail through the enterprsie SEFG, unlawfully directed the corporate paralegal of Enterprise Sound Exchange to send only him, at only his email, all information regarding royalties from Sound Exchange, including monies belonging to the Plaintiff-Decedent.

80. As a direct and proximate result of such violations, RICO Defendants

proximately caused harm to the business of Plaintiff-Decedent and therefore

the Estate of Decedent.

FOURTH CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(d)
(RICO Defendants Gee, Thompson, and Trotter)
*Enterprises*
Grand Negaz, Inc., Legendelphia, LLC, and Universal Music Publishing Group

81. Plaintiffs incorporate by reference all the preceding paragraphs of this

Complaint as if fully set forth herein.

82. At all relevant times, RICO Defendants are each "person[s]" within the

meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

83. From June 2013, until the present, RICO Defendants Gee, Thompson and

Trotter and RICO Defendant UMPG and did conspire and agree among

themselves, and others, to knowingly, willfully, and unlawfully violate 18

U.S.C. § 1962(a), 18 U.S.C. § 1962(b), 18 U.S.C. § 1962(c), and conduct or

participate, directly or indirectly, in the conduct of affairs of Grand Negaz,

Inc., and Legendelphia, LLC, through a pattern of racketeering activity

within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), in

violation of 17 U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341

and 1343; U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i).

84. From 2013 and each year thereafter, RICO Defendants Gee, Thompson, and Trotter, and Huriddin devised or intended to devise a scheme to defraud Plaintiff Decedent and therefore the Estate of Decedent of money and state, and federal benefits of monetary value by depriving Plaintiff Decedent and therefore the Estate of Decedent of money by means of false or fraudulent pretenses and representations.

85. For the purposes of executing their scheme, RICO Defendants Gee, Thompson, Trotter, and Huriddin delivered or caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers or received such therefrom. For the purposes of executing their scheme, RICO Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

86. RICO Defendants Gee, Thompson, Trotter and UMPG participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance the scheme to deceive or defraud Plaintiff-Decedent. RICO Defendants knowingly and intentionally prepared documents, including but not limited to, emails, notices, and other documents, and then knowingly and with the intent to deceive Plaintiff-Decedent, caused those documents to be

sent via wire, email or letters to Plaintiff-Decedent or entities that would
further RICO Defendants' scheme to defraud.

Pattern of Racketeering Activity.

87. Between June and September of 2013, RICO Defendants Gee, Thompson,
and Trotter conspired together and began a campaign of telephone calls,
texts, emails and meetings with each other and fraudulently used the funds
of Grand Negaz, Inc., to establish and set up the operation of Legendelphia,
LLC, with Thompson and Trotter as sole members.

88. During September 2013, RICO Defendants Gee, Thompson and Trotter
conspired to fraudulently amend the bylaws of Grand Negaz, Inc., and
communicated by wire and email with Universal Music Publishing Group
and fraudulently authorized Legendelphia, LLC to sign an exclusive
publishing agreement amendment with RICO Defendant Universal Music
Publishing Group without notice, knowledge or consent of the Plaintiff-
Decedent.

89. On or about August 2013, RICO Defendants Gee, Thompson and Trotter, to
further their agreed scheme, electronically communicated with, and directed,
and caused a fraudulent letter and email to be written from Legendelphia.
LLC to RICO Defendant Universal Music Publishing Group (UMPG), that
demanded all publishing and writing royalties, including those of the

Plaintiff-Decedent, be fraudulently diverted from Grand Negaz, Inc., to the newly formed Legendelphia, LLC.

90. On or about September 12, 2013, after receiving the fraudulent amendment by email, RICO Defendant Universal Music Publishing Group, agreed by email to effectuate the scheme, and at the wired direction of RICO Defendants Gee, Thompson and Trotter, UMPG changed the electronic access portal while RICO Defendants, Gee, Thompson and Trotter began to transfer Grand Negaz, Inc.'s valuable publishing catalogues to the newly created Legendelphia, LLC, without knowledge and approval of the remaining minority shareholders of Grand Negaz, Inc., including the Plaintiff-Decedent.

91. In 2013 and 2014, RICO Defendants Thompson and Trotter utilizing electronic communication requested and received from enterprise UMPG hundreds of thousands of dollars in advances against publishing royalties without the knowledge or consent of the Plaintiff-Decedent.

92. Said advances operated as unrecouped funds of enterprise UMPG and represented a theft of Plaintiff-Decedent's publishing royalties by RICO Defendants Gee, Thompson, and Trotter.

93. From September 2013, and bi-annually every year since, RICO Defendants' access the portal required by use of electronic wire devices in order to

conduct fraudulent electronic transfers of monies, some of which belonged to Plaintiff-Decedent, into banking institutions.

94. In 2019, 2020, 2021, 2022 and until March 1, 2023, the RICO Defendants Gee, Thompson, and Trotter (the Plotters) agreed to, and did, communicate false and fraudulent information using emails and phone calls to enterprise UMPG to cause the prevention of Plaintiff-Decedent, and therefore the Estate of Decedent, and its Executrix, to access the financial portals of enterprise UMPG to review and receive his monies from publishing and other revenue generating activity of the Roots.

95. As a direct and proximate result of such violations, RICO Defendants proximately caused harm to the business of Plaintiff-Decedent and therefore the Estate of Decedent.

FIFTH CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(a)
(RICO Defendants Gee, Thompson, and Trotter)
*Enterprises*
Okay Tours, LLC and The Roots on Tour, Inc.

96. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

97. At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

98. In May, 2013, RICO Defendants Gee, Thompson and Trotter took monies from Okay Tours, LLC., some of which belonged to Plaintiff Decedent (33%), and through a pattern of racketeering activity and fraudulent misrepresentation, used those monies to acquire an interest in, to establish, or operate The Roots on Tour, Inc., in violation of 18 U.S.C. § 1962(a).

Pattern of Racketeering Activity.

99. Between June and September of 2013, RICO Defendant Gee, sent Plaintiff-Decedent an email wherein, for the purpose of defrauding Plaintiff-Decedent of his portion of the assets in Okay Tours, LLC, he told the 33% Owner Plaintiff-Decedent that he, RICO Defendant Gee, was changing the "dynamics" of the touring procedures and falsely stated that the Plaintiff-Decedent would retain his 33% share in the Roots on Tour.

100. Instead, and contrary to his representation to the Plaintiff-Decedent, RICO Defendant Gee began shutting down Okay Tours, LLC, and, utilizing resources of PNC Bank, he seized the financial assets of Okay Tours, LLC, to establish and set up the operation of The Roots on Tours, Inc.,

101. At or around September 2013, RICO Defendant Gee, to further his fraudulent acquisition of the assets of Okay Tours, LLC., used the wires to falsely inform Plaintiff-Decedent, that Plaintiff-Decedent would continue to

receive his share of The Roots on Tours, Inc. (33%).  Plaintiff-Decedent

relied upon that falsehood to his detriment.

102. In 2013, RICO Defendant Gee, without the authority or knowledge of

Plaintiff-Decedent, operated an account with a financial institution to

deposit the assets of Okay Tours, LLC., and to write checks from that

account to the RICO Defendant Roots on Tour, Inc., for the purpose of

defrauding Plaintiff-Decedent his promised 33% share and refusing to

account for such revenues after demand.

103. From 2013, until the present, RICO Defendants Gee, Thompson and

Trotter communicated by wire, email and telephone purporting to authorize

The Roots on Tours, Inc., to sign performance agreements for hundreds of

thousands of dollars with various entities and utilized the brand trademark

of the Roots without compensation to the Plaintiff-Decedent, an original

owner of the trademark.

104. As a direct and proximate result of such violations, RICO Defendants

proximately caused harm to the business of Plaintiff-Decedent and

therefore the Estate of Decedent.

SIXTH CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(b)
(RICO Defendants Gee, Thompson and Trotter)
*Enterprises*
Okay Tours, LLC and The Roots on Tour, Inc.

105. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

106. At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

107. From June, 2013 until the present, RICO Defendants Gee, Thompson and Trotter, through a pattern of racketeering activity, within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), maintained control of both Okay Tours, LLC, and The Roots on Tour, Inc., while committing violations of 17 U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341 and 1343; 18 U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i), and therefore did violate 18 U.S.C. § 1962(b).

Pattern of Racketeering Activity.

108. Since 2013 until the present, RICO Defendant Gee, Thompson and Trotter communicated, using telephones, computers, and emails with multiple promoters and representatives of Live Nation Entertainment, by wire, email and telephone, falsely purporting to have the authorization for, and the control of, Grand Negaz, Inc., The Roots on Tour, Inc., and the Brand Trademark the Roots, in order to entice multiple performance agreements for millions of dollars with various entities without the promised payments to Plaintiff-Decedent.

109. Since 2013 and continuing until 2019, RICO Defendant Gee Plaintiff-Decedent used a rubber stamp to affix the name of the Plaintiff-Decedent and to forge his name upon legal documents and agreements without Plaintiff-Decedent's consent, permission or knowledge.

110. From 2013 until the present, RICO Defendants Gee, Thompson and Trotter have, via multiple wire, bank checks and other negotiable instruments, received millions of dollars representing the brand use of The Roots, without payment to Plaintiff-Decedent.

111. As a direct and proximate result of such violations, RICO Defendants proximately caused harm to the business of Plaintiff Decedent and therefore the Estate of Decedent.

SEVENTH CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(d)
(RICO Defendants Gee, Thompson and Trotter)
*Enterprises*
Okay Tours, LLC and The Roots on Tour, Inc.

112. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

113. At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

114. RICO Defendants Gee, Thompson and Trotter, each of whom are persons associated with the "Plotters", did conspire and agree among themselves to

knowingly, willfully, and unlawfully violate 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(b), 18 U.S.C. § 1962(c) and conduct or participate, directly or indirectly, in the conduct of Okay Tours, LLC's, and The Roots on Tour, Inc.'s, affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through violations of 17 U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341 and 1343; 18 U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i).

Pattern of Racketeering Activity.

115. Since 2013 until the present, to further their scheme of defrauding Plaintiff-Decedent of monies owed to him as an owner of the Brand ROOTS, RICO Defendants Gee, Thompson and Trotter communicated, using telephones, computers, and emails with promoters and representatives of Live Nation Entertainment, by wire, email and telephone, and purported to have the authorization for, and the exclusive control of, The Roots on Tour, Inc., and the Brand Trademark the Roots, in order to entice multiple performance agreements for millions of dollars with various entities without the any payments to Plaintiff-Decedent.

116. From 2013 until the present, RICO Defendants Gee, Thompson and Trotter have, via multiple wire, bank checks and other negotiable instruments,

received millions of dollars representing the brand use of The Roots,

without payment to Plaintiff-Decedent.

117. As a direct and proximate result of such violations, RICO Defendants

proximately caused harm to the business of the Plaintiff Decedent and

therefore the Estate of Decedent.

EIGHTH CLAIM FOR RELIEF
Violations of Federal Civil RICO
18 U.S.C. § 1962(c)
(RICO Defendant Nuriddin)
*Enterprises*
SEFG, Blueprint Artists Management, Live Nation, Roots Picnic and Universal
Music Publishing Group

118. Plaintiffs incorporate by reference all the preceding paragraphs of this

Complaint as if fully set forth herein.

119. At all relevant times, RICO Defendant Nuriddin is a "person[s]" within the

meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

120. RICO Defendant Nuriddin is a person associated with, or employed by,

Grand Negaz, Inc., Legendelphia, LLC., SEFG, Blue Print Artists

Management, Live Nation, who did conduct or participate, directly or

indirectly, in the conduct of the affairs of SEFG, Blueprint Artists

Management, Roots Picnic, Universal Music Publishing Group and Live

Nation through a pattern of racketeering activity within the meaning of 18

U.S.C. §§ 1961(1), 1961(5), and 1962(c), while committing violations 17

U.S.C. § 506(A) and 18 U.S.C. § 2319; 18 U.S.C. §§ 1341 and 1343; 18 U.S.C. § 1344; and 18 U.S.C. § 1956(a)(1)(A)(i), and therefore did violate 18 U.S.C. § 1962(c).

121. From 2013, and continued to 2019, and at times relevant herein, RICO Defendant Murir Nuriddin, was employed by RICO Defendants Grand Negaz, Inc., Legendelphia, LLC, Blueprint Artists Management, and Roots Picnic, and was responsible for the day-to-day office activities of the aforementioned RICO Enterprises, including performing detailed financial and banking activities.

122. During all relevant times expressed herein RICO Defendant acted with the full knowledge, permission, approval of RICO Defendant Gee, and was under the immediate supervision and control of RICO Defendant Gee.

123. From 2011, continued to 2022, and at all relevant times mentioned herein, RICO Defendant Nuriddin, handled daily ledgers, processed cash receipts, collected wire transfers and deposited checks of the SEFG, BAM, Roots on Tour, Grand Negaz and Grand Wizards enterprises.

Pattern of Racketeering Activity.

124. From 2013, continued to 2022, and at all relevant times herein, RICO Defendant Nuriddin regularly, on a daily basis, made telephone calls and sent and received emails in furtherance of the scheme to unlawfully take

monies from the Plaintiff-Decedent, to illegally receive publishing and copyrights revenue from RICO Defendant UMPG and to assist RICO Defendant Gee in fraudulently retaining funds belonging to Plaintiff-Decedent.

125. From 2013, continued to 2021, and at all times relevant herein, regularly made numerous telephone calls and sent and received numerous emails in the furtherance of the scheme to prevent the Plaintiff-Decedent from accessing his copyright and publishing revenues from RICO Defendant UMPG.

126. In or about August 2013, utilizing the mail and wires RICO Defendant Nuriddin unlawfully seized and used the electronic portal codes necessary to receive income from RICO Enterprise UMPG of Plaintiff-Decedent's publishing, mechanical, digital and recording rights pursuant to his ownership in Grand Negaz, Inc.

127. During 2015, RICO Defendant Nuriddin, with the knowledge, permission and agreement of RICO Defendant Gee, used an unauthorized electronic code to access the publishing payment system of the RICO Defendant UMPG via electronic wire.

128. In May 2020, using written electronic communication with enterprise UMPG, RICO Defendants Nuriddin and Gee intentionally directed and "phased out" Plaintiff-Decedent's portal access to his publishing funds.

129. On September 24, 2020, in the effort to fraudulently collect monies belonging to Plaintiff-Decedent from the enterprise UMPG, RICO Defendant Nuriddin sent an email to Plaintiff-Decedent giving him false electronic codes for archived royalty statements.

130. As a direct and proximate result of such violations, RICO Defendants proximately caused harm to the business of Plaintiff Decedent and therefore the Estate of Decedent.

NINTH CLAIM FOR RELIEF
(Federal Trademark Infringement under 15 U.S.C. §§ 1114 and 1125(a) against Okay Player Records, LLC, The Roots on Tour, Inc., The Roots Picnic, LLC, Truer Notes, LLC and Legendelphia, LLC )

126. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

127. Since 1996 until the present, the Plaintiff-Decedent, and therefore the Estate of the Decedent, is an owner in the brand name federally registered trademark the 'ROOTS.'

128. Since at least April 2019, the actions of Defendants described in this Claim and specifically, without limitation and without the consent of the Plaintiff-Decedent, and therefore the Estate of the Decedent, used the ROOTS

trademark, and confusingly similar variations thereof, in interstate commerce to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned thereon, throughout the United States including Pennsylvania, which constituted trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a).

129. For example, since at least June 2019, the Defendant Truer Notes, LLC has a continuing ongoing performance paid contract with NBC Studios the Tonight Show with Jimmy Fallon and uses the on-air trademark the ROOTS without permission of, or payment to, the Plaintiff-Decedent.

130. Since at least June 2019, the Defendant Okay Player Records, LLC uses the trademark ROOTS on its internet site to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned thereon, throughout the United States including Pennsylvania, without permission of, or payment to, the Plaintiff-Decedent.

131. Since at least June 2019, the Defendant The Roots on Tour, Inc., uses the trademark ROOTS on the internet, and at live appearances, to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned thereon, throughout the United States including Pennsylvania, without permission of, or payment to, the Plaintiff-Decedent.

132.  Since at least June 2019, the Defendant, Roots Picnic, LLC, uses the trademark ROOTS on the internet, and at live appearances, to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned thereon, throughout the United States including Pennsylvania, without permission of, or payment to, the Plaintiff-Decedent.

133. Since at least June 2019, the Defendant, Legendelphia, LLC, uses the trademark ROOTS on the internet, and at live appearances, to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned thereon, throughout the United States including Pennsylvania,

134. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, loss revenue and diminution and injury in the value of and goodwill associated with Plaintiff-Decedent's ownership in the ROOTS mark.

135. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

136. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of ROOTS products, and the costs of this action.

137. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception as to the ownership of the ROOTS trademark, which makes this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

TENTH CLAIM FOR RELIEF
PA. 54 § 1123.  Infringement. (Pennsylvania Trademark Act)
against Okay Player Records, LLC, The Roots on Tour, Inc., The Roots Picnic,
LLC, Truer Notes, LLC and Legendelphia, LLC

138. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

139. Since 1996 until the present, the Plaintiff-Decedent, and therefore the Estate of the Decedent, is an owner in the brand name federally registered trademark the 'ROOTS.'

140. Since at least April 2019, the actions of GRAND NEGAZ, INC., and Defendants described in this Claim specifically, without limitation and without the consent of the Plaintiff-Decedent, and therefore the Estate of the Decedent, used the ROOTS trademark, and confusingly similar variations thereof, in interstate commerce to advertise, promote, market, and sell ROOTS products with the trademark "ROOTS" emblazoned

thereon, throughout the United States including Pennsylvania, which

constituted trademark infringement in violation of 15 U.S.C. §§ 1114 and

1125(a).

141. Since at least June 2019, the Defendant Truer Notes, LLC has a continuing

ongoing performance paid contract with NBC Studios the Tonight Show

with Jimmy Fallon and uses the on-air trademark the ROOTS without

permission of, or payment to, the Plaintiff-Decedent, in order to advertise

the Tonight Show.

142. Since at least June 2019, the Defendant Okay Player Records, LLC uses

the trademark ROOTS on its internet site to advertise, promote, market,

and sell ROOTS products with the trademark "ROOTS" emblazoned

thereon, throughout the United States including Pennsylvania, without

permission of, or payment to, the Plaintiff-Decedent.

143. Since at least June 2019, the Defendant The Roots on Tour, Inc., uses the

trademark ROOTS on the internet, and at live appearances, to advertise,

promote, market, and sell ROOTS products with the trademark "ROOTS"

emblazoned thereon, throughout the United States including Pennsylvania,

without permission of, or payment to, the Plaintiff-Decedent.

144. Since at least June 2019, the Defendants Live Nation Entertainment, Inc.,

and Roots Picnic, LLC, uses the trademark ROOTS on the internet, and at

live appearances and events, to advertise, promote, market, and sell

ROOTS products with the trademark "ROOTS" emblazoned thereon, and

apply such reproduction to labels, signs, prints, packages, wrappers,

receptacles or advertisements intended to be used in connection with the

sale or other distribution of such goods or services throughout the United

States including Pennsylvania, without permission of, or payment to, the

Plaintiff-Decedent.;

145. Since at least June 2019, the Defendant, Legendelphia, LLC, uses the

trademark ROOTS on the internet, and at live appearances, to advertise,

promote, market, and sell ROOTS products with the trademark "ROOTS"

emblazoned thereon, throughout the United States including Pennsylvania,

146. The actions of Defendants, if not enjoined, will continue. Plaintiff has

suffered and continues to suffer damages in an amount to be proven at trial

consisting of, among other things, loss revenue and diminution and injury

in the value of and goodwill associated with Plaintiff-Decedent's

ownership in the ROOTS mark.

147. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. §

1116.

148. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of ROOTS products, and the costs of this action.

149. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception as to the ownership of the ROOTS trademark, which makes this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

ELEVENTH CLAIM FOR RELIEF
Tortious Interference with Inheritance Rights.
Common Law

150. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

151. Stephanie Hubbard has a lawful expectancy to inherit from the Estate of Leonard Hubbard.

152. The RICO Defendants Gee, Thompson, Trotter and Nuriddin intentionally interfered with her expectancy through tortious conduct, more particularly described in paragraphs 1-105 herein.

153. The RICO Defendants' wrongful conduct caused Stephanie Hubbard to lose out on her inheritance.

154. The RICO Defendants wrongful interference proximately caused Beneficiary to suffer damages.

155. The Plaintiff Stephanie Hubbard is entitled to punitive damages.

Summary

156. Each RICO Defendant has engaged in multiple predicate acts and the conduct of each RICO Defendant constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

157. RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiff-Decedent, constitutes a continuous course of conduct, which was intended to defraud Plaintiff-Decedent of money and property through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

158. RICO Defendants racketeering activities were multiple, continuous, and ongoing from about December of 2015, and remain ongoing.

159. RICO Defendants Gee, Thompson, Trotter, and Huriddin, SEFG, Blueprint Artists Management and Live Nation, have, on multiple occasions, knowing that the money involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted, or attempted to

conduct, a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343. RICO Defendants have, therefore, violated 18 U.S.C § 1956(a)(1)(A)(i).

160. Plaintiffs were injured in their money and property by reason of RICO Defendants' violations of 18 U.S.C. § 1962(c).

161. RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962. Plaintiff-Decedent, and therefore the Estate of Decedent, are the ultimate victims of RICO Defendants' unlawful enterprises.

162. Plaintiff-Decedent, and therefore the Estate of the Decedent, have been and will continue to be injured in its money and property in an amount to be determined at trial.

163. At all times herein, Plaintiff-Decedent relied upon the false and fraudulent promises of the RICO Defendants and suffered harm as a proximate result of that reliance.

164. In furtherance of their scheme, since 2013, the RICO Defendants used the wires and U.S. mails and private or commercial carriers to deliver

documents and things to Plaintiffs and the Enterprises for the purposes of
defrauding Plaintiffs, including, but not limited to the following:

a.  Emails and website postings incorporating false, fraudulent and
    misleading statements regarding:

b.  Retaining monies due from the ownership of copyrights and
    trademarks by the Plaintiff Decedent and the Estate of Decedent.

c.  Directing and instructing that actions and omissions be taken to
    deprive Plaintiff Decedent and the Estate of Decedent of money and
    property as well as other state and federal rights.

d.  Wirings and/or mailings between and among RICO Defendants
    concerning: the scheme to defraud Plaintiff Decedent and therefore
    the Estate of the Decedent of money as well as other state and federal
    rights.

e.  Funds transferred between RICO Defendants and banking institutions
    with the intent that those funds be used to promote the carrying on of
    RICO Defendants' legitimate business and to continue the scheme to
    defraud Plaintiffs of money as well as other state and federal rights.

f.  Electronic deposits, expenditures and filings containing false and
    misleading statements intended to further Defendants' scheme to
    defraud money and property as well as state and federal benefits.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

165.    Award Plaintiff-Decedent, and therefore the Estate of the Decedent

such equitable injunctive and ancillary relief as may be necessary to avert

the likelihood of irreparable injury or prohibit the illicit conduct described

herein during the pendency of this action and to preserve the possibility of

effective final relief, including but not limited to, a temporary restraining

order and a preliminary injunction;

166.    Award Plaintiffs a declaratory judgment finding Defendants' past

violations were part of a pattern, deliberate in nature and Defendants'

businesses will present a reasonable likelihood of opportunities to violate the

law in the future;

167.    Order RICO Defendants to cease and desist from violating 18 U.S.C.

§ 1964.

168.    Order an inspection of all records pertaining to Plaintiff-Decedent and

the Estate of Decedent, possessed by the RICO Enterprises SEFG, Blueprint

Artists Management, Live Nation Entertainment, Universal Music

Publishing Group, SoundExchange, NBC Studios, LLC, Roots on Tour, Inc.,

Truer Notes, LLC

169.     Restitution to Plaintiffs of all money, property, and benefits Plaintiff

Decedent and therefore the Estate of the Decedent that were unlawfully

defrauded and deprived of by RICO Defendants, including reasonable

interest thereon.

170.     Award attorneys' fees and costs to Plaintiff-Decedent.

171.     Order that the Defendants stop using the Roots trademark until a

determination is made regarding Brand value. 15 U.S.C. § 1125(c)

172.     Order the freezing of all articles and other items with the Trademark

the "Roots" until a determination is made regarding value of the articles and

items.

173.     Order an accounting to be done by RICO Defendants and inspection

by the Plaintiffs of all ledgers, bank statements and other forms of

transaction records maintained by the RICO Defendants from 2013 until the

present.

174.     Order the payment of damages sustained by the plaintiff, in an amount

to be determined at trial, the costs of the action and whatever other relief the

Court may deem just and proper.

175.     Pursuant to 18 U.S.C. § 1964(c), Order treble damages plus costs and

attorneys' fees from RICO Defendants as well as any other relief authorized

by statute.

DATED this 22nd day of March 2023.

/s/ Harold Lucas
Harold E. Lucas
Lucas Law Group, PLLC
3512 Raleigh, NC 27610
252-432-0015
lukelucasis@gmail.com
*Attorney for the Plaintiffs*